IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-20175

GRAYLON L. WALCH

Plaintiff - Appellant

v.

ADJUTANT GENERAL'S DEPARTMENT OF TEXAS; STATE OF TEXAS; MICHAEL W. WYNNE, Secretary of Air Force of the United States

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

Before KING, DeMOSS, and SOUTHWICK, Circuit Judges.

SOUTHWICK, Circuit Judge:

The opinion issued in this case on June 6, 2008 is withdrawn and this revised opinion is substituted.

Graylon L. Walch brought suit based on his discharge from the Texas Air National Guard and the loss of his position as a full-time National Guard civilian employee. The district court found the claims to be non-justiciable. We agree and affirm. Our decision does not affect any right Walch may have to return to the interrupted administrative processing of some of his claims under Title VII.

## I. FACTS AND PROCEDURAL HISTORY

The district court dismissed the complaint on two grounds: no subject matter jurisdiction and failure to state a claim. The court accepted the allegations in the complaint as true for purposes of the dismissal but concluded that all the claims were barred by a doctrine that prevents members of the armed services from bringing claims that arise incident to their military service.

Graylon L. Walch is an African-American who was a Major in the Texas Air National Guard. He was also employed as a National Guard Technician with the Texas Air National Guard. This means that Walch had a traditional National Guard position – what is often colloquially but somewhat inaccurately thought of as an obligation simply to drill for a weekend every month and then to train for two weeks in the summer. In addition, he had a full-time civilian position with the Guard, a Monday through Friday job if you will, as a "federal technician." Later we will explore the relevant details about federal technicians.

The Defendants include the State of Texas and that state's military department. Since passage of the federal Militia Act of 1792, each state has been required to have an Adjutant General to serve as the administrative head of that state's militia or, in more modern terms, the state's National Guard.[1] The executive branch department for the Texas state military is headed by and named for The Adjutant General. Tex. Gov't Code Ann. § 431.022 (Vernon 2005). The Plaintiff brought this suit against the State and its Adjutant General's Department, and also against the head of his employing agency as a federal technician, the Secretary of the Air Force of the United States.

---

[1] Militia Act of 1792, Ch. XXXIII, § 6, 1 Stat. 271, 273 (1792); Simeon E. Baldwin, Absolute Power, An American Institution, 7 YALE L. J. 1, 6 (1897).

Major Walch became the subject of what is called a "command-directed inquiry" in February 2002. A commissioned officer was appointed by the Assistant Adjutant General for the Texas Air Guard to investigate allegations about the Air Guard unit located in Nederland, which Major Walch commanded. The final report from the investigator is dated March 26, 2002. In a letter dated April 11, 2002, the Special Assistant to The Adjutant General of Texas informed Major Walch that his removal from this command was being recommended because of offenses substantiated by the investigation. This letter did not recommend his discharge from the Air National Guard; that recommendation was made in 2004. Because the district court accepted Major Walch's allegations of discrimination as true for purposes of ruling on jurisdiction, the details of the charges against him are largely irrelevant.

According to his amended complaint, Major Walch filed several administrative claims of discrimination based on race and sex, and also for retaliation resulting from his earlier claims. The claim that has been referenced in Major Walch's record excerpts on appeal was for race discrimination, filed with the State Equal Employment Manager. No resolution appears in the record on any of the equal employment administrative claims.

The military discharge procedures moved slowly, as did the state equal employment investigation. In a letter dated July 18, 2004, the Texas Air National Guard commander informed Walch that a recommendation was being sent to The Adjutant General that Walch be involuntarily discharged as an Air National Guardsman. The letter referred to "substandard performance" generally, with five specifications, including Major Walch's alleged failure to meet standards of leadership, professionalism, and judgment; that he did not follow established leave procedures; that he engaged in sexual harassment of

3

junior female airmen under his command; and that he had lost the respect of subordinates. The procedure for him to respond to the recommendation was described in the letter. Major Walch's response was dated August 10, 2004.

No hearing was held. In a letter dated October 5, 2004, The Adjutant General of Texas, Lieutenant General Wayne Marty, informed Major Walch of the acceptance of the recommendation for Walch's dismissal. Marty informed Walch that his service would be characterized as honorable. Once Walch was discharged as a Texas Air National Guardsman, he was ineligible to be a civilian National Guard technician – ineligibility that we will discuss below.

As of late 2004, Major Walch was neither an airman in the Texas Air National Guard nor a federal technician. We will nonetheless refer to him using his final military rank as a matter of usual practice and common courtesy.

In November 2005, Major Walch filed a complaint, pro se, in the federal district court for the Southern District of Texas. The Texas Adjutant General's Department and the State were the initial defendants. After retaining counsel, Walch amended his complaint to add Michael Wynne, Secretary of the Air Force of the United States. The amended complaint made claims for deprivation of constitutional due process, conspiracy, failure to prevent conspiracy, intentional infliction of emotional distress, and retaliation.

Both the state and the federal Defendants filed motions to dismiss under Civil Procedure Rules 12(b)(1) and 12(b)(6). The district court granted the motions, determining Major Walch's claims were non-justiciable because all were incident to his military service. Walch timely appealed that decision.

## II. DISCUSSION

Major Walch divides his brief into three arguments: (1) the case should be remanded to the United States Air Force for exhaustion of remedies; (2) instead of dismissing with prejudice, the trial court should have dismissed without prejudice so that he could "continue the uncompleted administrative remedies"; and (3) the procedures followed as well as the evidence to support his dismissal from his civilian job and from the Air Guard were inadequate. Weaving its way through other issues is the argument that the district court erroneously concluded that his claims were non-justiciable.

Though certainly acceptable for setting out his challenges to the district court action, that division of issues is not the most useful for our explanation. The best structure for our review is to identify the claims made, to determine whether any are justiciable, and to analyze whether anything further may occur administratively even if this civil action was properly dismissed.

Our first requirement, though, is to address the review standard.

The district court determined that Major Walch's claims were non-justiciable because all were incident to his military service, citing Feres v. United States, 340 U.S. 135 (1950). The court also held that dismissal was warranted because Major Walch "fail[ed] to state a claim upon which relief may be granted." While the district court invoked the language of Federal Rule of Civil procedure 12(b)(6), it did not explicitly cite that rule as the grounds for dismissal. The district court's judgment did not rely on a particular rule either. Our precedents do not always identify whether Title VII claims that are found to be barred by Feres should be dismissed under Rule 12(b)(1), for lack of subject matter jurisdiction, or Rule 12(b)(6), for failure to state a claim. In other kinds of suits barred by Feres, the appropriate ground for dismissal varies. See

Gaspard v. United States, 713 F.2d 1097, 1105-06 n.20 (5th Cir. 1983) ("The court was correct in dismissing the action for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), regarding the [Federal Tort Claims Act] claims and for failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6), on the Bivens claims . . . ."). We have applied the summary judgment standard to review a district court's Rule 12(b)(6) dismissal of a civilian employee's Title VII claim against her military employer because the district court considered matters outside of the pleadings. Meister v. Tex. Adjutant Gen's. Dep't, 233 F.3d 332, 335 (5th Cir. 2000). While Meister seems to suggest that this Circuit would apply Rule 12(b)(6) to determine whether a Title VII claim should be dismissed pursuant to Feres, it does not command this approach.[2]

Major Walch has raised both statutory claims (under Title VII) and constitutional claims (under Bivens and Sections 1983 and 1985). Our standard of review for a Feres dismissal would be de novo under either Rule 12(b)(1) or 12(b)(6). See Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697, 701-02 (5th Cir. 2007). The choice of rules does hold the potential, however, to affect the materials in the record that may be considered when conducting our review. The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments, Fin. Acquisition Partners v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006), while under Rule 12(b)(1), the court may consider any of the following: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by

---

[2] Other courts have applied Rule 12(b)(1) to dismiss Title VII suits under the Feres doctrine. See, e.g., Baldwin v. U.S. Army, 223 F.3d 100, 101 (2d Cir. 2000); Randall v. United States, 95 F.3d 339, 343-46 (4th Cir. 1996).

undisputed facts plus the court's resolution of disputed facts." Robinson v. TCI/US West Communications Inc., 117 F.3d 900, 904 (5th Cir. 1997).

Major Walch attached numerous exhibits to his response in opposition to the Defendants' motions to dismiss. Both Defendants referenced some of these same documents in their motions to dismiss. We have drawn from these exhibits for some of our factual discussion. In our later legal analysis, though, we rely on only two of these documents. These are letters relating to Major Walch's discharge that were explicitly referenced in the complaint, acknowledged in the answers, and attached to Major Walch's opposition to the Defendants' motions to dismiss. We will call them the "discharge letters."

Relying upon the discharge letters is consistent with our precedents. This is because both documents may be considered even under a Rule 12(b)(6) analysis. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004). No party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss. See WRIGHT & MILLER § 1357.

A. The claims

The amended complaint states these jurisdictional predicates:

> This is an action alleging retaliation for opposing racial discrimination, denial of the constitutionally protected right of due process, and protection from unconstitutional conspiracy and failure to prevent conspiracy. The Court has jurisdiction under 42 U.S.C. § 2000e-16, et seq. and 2000e-5, et seq. Jurisdiction is also invoked under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. 1999 (1971), and for Fifth and Thirteenth Amendment violations. Walch filed his

charge with the EEOC in a timely manner. After receiving the right to sue letter from the EEOC, Walch filed the instant lawsuit within the statute of limitations.

In summary, Major Walch alleged race and sex discrimination while a federal technician and a member of the Texas National Guard, that he was the victim of retaliation, and that his dismissal from the Guard and the loss of his civilian position were similarly motivated. The amended complaint identifies Title VII of the 1964 Civil Rights Act as one source of rights. 42 U.S.C.§§ 2000e-5 & 2000e-16. In addition, the complaint refers to Bivens claims for violations of the Fifth and Thirteenth Amendments to the United States Constitution. In his opposition to the Air Force's later motion to dismiss, Major Walch asserted that he had inaccurately used the Bivens label to refer to claims against the Texas Adjutant General actually under 42 United States Code, Sections 1983, 1985, and 1988. He never sought to amend his complaint on that basis.

The relief that is sought includes reinstatement, back pay, money damages for the discrimination, and attorneys' fees.

Understanding the claims, we examine whether they are justiciable.


B. Justiciability of Guardsman's claims of discrimination

The district judge found these claims to run afoul of the doctrine that "United States military personnel may not bring actions based on injuries suffered incident to their service in the armed forces." See Feres, 340 U.S. 135.

Feres was a Federal Torts Claims Act suit. Id. at 138. In 1987, the Supreme Court also applied Feres to block Bivens claims by service members whose injuries were incident to service. United States v. Stanley, 483 U.S. 669, 684 (1987). Further, this Circuit applied the Feres doctrine to Section 1983

claims that are incident to military service, in a case brought by a Texas National Guardsman. Crawford v. Tex. Army Nat'l Guard, 794 F.2d 1034, 1035-36 (5th Cir. 1986). Finally, we also have held that Title VII claims that originate from military status are barred by Feres. Brown v. United States, 227 F.3d 295, 299 (5th Cir. 2000).

In summary, then, each category of claim brought by Major Walch has been held subject to Feres in certain circumstances. Walch argues his circumstances are distinguishable primarily because he is a dual-status Guardsman and a federal technician. The discrimination against him allegedly occurred during his civilian work. Consequently, we find this an appropriate point to discuss the details of his employment.

The National Guard Technician Act, Pub. L. No. 90-486, 82 Stat. 755 (Aug. 13, 1968), created an unusual status, mixing state command with federal employment, combining civilian job positions with military leadership:

> Congress has authorized the use of National Guard technicians since the National Defense Act of 1916. Previously defined as "caretakers and clerks" with duties limited to maintenance of National Guard supplies and equipment, technicians gradually expanded their role "to provide support in the administration and training of the National Guard military organization and for the day-to-day maintenance and repair of equipment which cannot be accomplished during normal military training periods."
>
> Prior to 1968, all technicians, except those in the District of Columbia, were state employees paid with federal funds; approximately ninety-five percent of the technicians held dual status as members of the National Guard. In the National Guard Technicians Act of 1968, Congress converted technicians to federal employee status to provide them a uniform system of federal salaries, retirement, fringe benefits, and to clarify their status under the Federal Tort Claims Act (FTCA). Further, this legislation

sought to recognize both the military and state characteristics of the National Guard by providing administrative authority to the states over the technicians.

In Perpich v. Department of Defense, [496 U.S. 334, 348 (1990),] the Supreme Court noted that National Guard personnel "must keep three hats in their closets – a civilian hat, a state militia hat, and an army hat – only one of which is worn at any particular time." Similarly, Congress intended that National Guard technicians wear one of three different hats at any given moment. First, National Guard technicians wear a civilian hat as federal civilian employees. Specifically, technicians are "excepted service" civil servants employed under 32 United States Code § 709.

Second, as a condition precedent to the civilian position, the technician must separately obtain and maintain military membership in a state National Guard. Section 709(a) of [Title 32, U.S. Code] provides that individuals "may be employed as technicians only 'under regulations prescribed by the Secretary of the relevant military branch.'" Each technician "shall, while so employed, be a member of the National Guard and hold the military grade specified by the secretary concerned for that position." A technician must maintain membership in the National Guard or be terminated from the civilian technician position.

Third, the technician wears a "federal hat" as a member of either the Army National Guard of the United States or the Air National Guard of the United States, which are Reserve Components of the United States Army and Air Force. Because they are, respectively, components of the United States Army and United States Air Force, the Army and Air National Guard of the United States are part of the "Armed Forces" of the United States.

State adjutant generals administer the National Guard Technician Act. Although normally state officers, when administering the National Guard Technician Act, they are considered agents of the federal government.[3]

---

[3] Maj. Michael J. Davidson & Maj. Steve Walters, Neither Man Nor Beast: The National Guard Technician, Modern Day Military Minotaur, ARMY LAW. 49, 51-52 (Dec. 1995) (footnotes and internal quotation omitted). Most of the 1968 Act was codified as 32 U.S.C. § 709.

Having set out these nuances of the dual status of a federal technician, we turn to Major Walch's claims. One cause of action is under Bivens, for violations of the Fifth and Thirteenth Amendment due to racial discrimination. As noted, the United States Supreme Court has determined that because of Feres, the Bivens remedy is unavailable to someone whose claims arise incident to military service. Stanley, 483 U.S. at 683-84. The plaintiff in that suit was a United States Army active duty master sergeant. Id. at 671.

How the Feres rules apply to claims arising from the service of a member of a state's National Guard, and specifically, a dual-status federal technician, is our issue. The Feres doctrine was premised on the disruptive nature of judicial second-guessing of military decisions:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

United States v. Brown, 348 U.S. 110, 112 (1954).

We find the Feres concerns to be as justified for today's National Guard as they were for the active duty military when the doctrine was first announced. This court in 1986 applied Feres to bar Bivens as well as Section 1983 and Section 1985 claims by Texas National Guardsmen. Crawford, 794 F.2d at 1035-36. The factual recitations in Crawford do not refer to the claimants as having a dual status, so we assume they were not federal technicians. The court said it could "perceive no basis upon which to distinguish" claims brought by National Guardsman under the civil rights statutes from those brought by active duty

members of a military service, as both kinds of claims "invite judicial second-guessing of military actions . . . ." Id. at 1036.

Applying these concerns to National Guard technicians, we find that the military character of their service is extensive. They are nominal federal employees commanded by the state Adjutants General. The technician "position is one in a military organization." NeSmith v. Fulton, 615 F.2d 196, 201 (5th Cir. 1980). It is true that "a military technician (dual status) is a Federal civilian employee." 10 U.S.C. § 10216(a). As civilians, these technicians are not while in that status subject to military discipline such as under the Uniform Code of Military Justice.[4] Even so, Major Walch was statutorily required while "performing duties as a military technician (dual status), [to] wear the uniform appropriate for the member's grade and component of the armed forces." 32 U.S.C. § 709(b)(4). As a technician, Major Walch was considered an employee of the Department of the Air Force. Id. at § 709(e).

We compare the details of National Guard technician employment with the factors that prevent Bivens claims from being brought by service members. Such claims are barred when they are incident to military service. Stanley, 483 U.S. at 684. Whether an activity is incident to military service is analyzed under a three-part test: (1) duty status, (2) site of injury, and (3) activity being performed. Parker v. United States, 611 F.2d 1007, 1013-15 (5th Cir. 1980). Under that test, Major Walch's claims all relate to his dual-status service, all arose on Air Force bases or other military locations, and all involve dual-status activities. Consequently, the Bivens claims are barred.

---

[4] Michael E. Smith, Federal Representation of National Guard Members in Civil Litigation, ARMY LAW. 41, 45 n.49 (Dec. 1995).

Major Walch also alleges that he made a claim under Sections 1983, 1985, and 1988 against the Texas Adjutant General but errantly labeled the claim as one under Bivens. We have already discussed a precedent in which we found that such claims brought by traditional Guardsmen are barred by Feres. Crawford, 794 F.2d at 1035-36. We were concerned that allowing such suits would require military commanders to justify their actions in civilian courts, an inappropriate invitation to judicial second-guessing of the military. Id. at 1035. A National Guard technician's employment is sufficiently intertwined with the military that litigation would cause the same improper intrusion.

We conclude that allowing claims pursuant to Bivens or Sections 1983 and 1985 to be brought by a National Guard technician against his chain of military command – even if some in that command also are technicians in addition to being Guardsmen – is contrary to the principles announced in the precedents we have cited. Technicians have a dual status. It is not possible to disentangle for these purposes their military role and command structure from their civilian employment, such that suits under Sections 1983 and 1985 or Bivens may proceed without raising the same concerns as when those claims are brought by traditional Guardsmen. Major Walch's inability to succeed under Section 1983 or 1985 also prevents any claim for attorneys' fees under Section 1988.

Major Walch's Title VII claims have to be analyzed separately. The reason is largely but not exclusively statutory, as Congress has permitted Title VII claims to be brought by National Guard technicians. Feres is still a bar to many of the claims, as we will discuss.

We start with one of our precedents in order to place it in the proper context. A Title VII claim by a civilian employee of the Texas Adjutant General's

Department was valid despite Feres. Meister, 233 F.3d at 333. Though Linda Meister, as the court put it, "happens to have been a non-commissioned officer in the Texas Air National Guard," and had a weekday civilian position in the Adjutant General's Department that was called "Administrative Technician," the civilian position was not under the National Guard Technician Act. Id. at 334. The Meister opinion notes that the plaintiff did not need to be in the Guard to have her civilian employment; thus, she did not have dual status. Id. at 338 n4.

The Meister case reveals another corner of the complicated world of the modern military's interaction with state "militias." The states and Congress use a variety of positions to perform the day-to-day operations of a state military department. A decision of this court addressed whether National Guard federal technicians could engage in collective bargaining. Lipscomb v. Fed. Labor Relations Auth., 333 F.3d 611 (5th Cir. 2003). The brief filed by Mississippi Adjutant General James H. Lipscomb, III, provides a useful description of the kinds of personnel who may be employed at a state military department:

> Active Guard/Reserve personnel ("AGR") under 10 U.S.C. § 101(d)(6)(A) and 32 U.S.C. § 502(f) [& Army Reg. 135-18]; civilian technicians; military technicians [under the National Guard Technicians Act]; state military employees; state civilian employees; [U.S. Code] Title 5 federal employees; contract employees; and [traditional] guardsmen, under Title 32 U.S.C. [and under the relevant state's own statutes regarding the military.]

Brief of Mississippi Adjutant General, Lipscomb, at *8-9, 333 F.3d 611 (No. 02-60060), 2002 WL 32255919.

We have no need to decide whether the list is completely accurate, but it is sufficient for our purposes to note that there are categories of employees of a state military department other than those involved in the precedents we have

14

discussed. In Meister, the plaintiff was not a dual-status federal technician. Though she separately also served as a traditional Guard member, it was during her week-day civilian job at the Adjutant General's Department that events occurred for which she brought suit.

The Title VII precedent from this court that is most relevant involved a dual-status employee. Brown, 227 F.3d 295. Captain Frederick Brown was in the United State Air Force Reserves and was also an Air Reserve technician. Such technicians, similar to National Guard technicians, are civilian employees who must maintain membership in the U.S. Air Force Reserves. Id. at 297-98. Captain Brown was apparently employed on an Air Force base. He was charged with misconduct as an airman, was discharged from the Air Force Reserves on that basis, and accordingly lost his Air Force technician position. He brought suit under Title VII for racial discrimination. Id. As here, the military defended on the basis that Feres barred the suit. Id.

The court discussed that by a specific waiver of immunity in Title VII, military departments could be sued for employment discrimination. Id. at 298; 42 U.S.C. § 2000e-16(a). We quoted the relevant regulation:

> (a) Individual and class complaints of employment discrimination and retaliation prohibited by Title VII . . . shall be processed in accordance with this part . . .
> (b) This part applies to:
> (1) Military departments as defined in 5 U.S.C. 102 [these are limited to the Departments of the Army, Navy, and Air Force];
>
> . . .
> (d) This part does not apply to:
> (1) Uniformed members of the military departments referred to in paragraph (b)(1) of this section; . . .

29 C.F.R. § 1614.103.

Though Captain Brown claimed that his discharge from the Air Force Reserves was discriminatory, the stated reason was that his performance was substandard. We found that the discharge was based on "actions taken within the military sphere" and were beyond the scope of what Title VII permitted to be challenged. Brown, 227 F.3d at 299. The distinction we made was that claims that were solely a result of the civilian position would be justiciable, but those that "originate from . . . military status" would not be. Id.

If the classification of a claim is difficult, we might turn to "factors such as whether the conduct is 'integrally related to the military's unique structure.'" Id. at 299 n.5. That "integral relation" phrase is from a case involving an Arizona National Guardsman who was a federal technician. Mier v. Owens, 57 F.3d 747, 751 (9th Cir. 1995). The claims concerned the Guard's failure to promote Captain Mier, which eventually caused him to be discharged. Id. at 750. There were three opinions from the three-judge Ninth Circuit panel. Two of the judges agreed that Title VII claims by a National Guard technician were justiciable unless they were integrally related to the military; the third judge did not believe it necessary to reach that holding, as it was sufficient just to conclude that Mier's claims could not be brought. Id. at 751 (Reinhardt, J., concurring and dissenting); id. at 752 (Rymer, J., concurring). Feres was found applicable.

The Ninth Circuit in Mier stated that personnel decisions are sufficiently related to military structure if they raise concerns about "military hierarchy and discipline" as opposed to "discriminatory conduct on the part of peers or subordinates." Id. at 750. Similarly, this court in Brown found that no justiciable claim could arise from the Air Force's decision that Captain Brown's

16

performance was substandard and that he should be discharged from the Air Force Reserves, resulting in the termination of his employment as a technician.

Taking a somewhat different approach, the Federal Circuit concluded that a 1996 statute, which said a technician was a "Federal civilian employee," affected the applicability of Feres to statutory claims of discrimination. Jentoft v. United States, 450 F.3d 1342, 1346 (Fed. Cir. 2006) (quoting 10 U.S.C. §10216(a)). Having respect for another circuit's views, we examine them closely.

As background, we note that the military technicians statute on which the Federal Circuit relied was adopted in 1996 and then amended twice by the end of 1997. The final version referred to technicians' civilian status as an introduction to provisions primarily concerned with the annual requests to Congress for authorizing specific numbers of technician positions; the language important for us is this: "For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee . . . ." Pub. L. No. 105-85, 111 Stat. 1629 (Nov, 18, 1997), codified as 10 U.S.C. §10216(a) (historical and statutory notes).

Our principal concern about Jentoft's focus is that there was nothing new in 1996 about considering these technicians to be federal civilian employees.[5] This Circuit had before 1996 often referred to such employees as federal civilian ones. E.g., Walker v. Alexander, 569 F.2d 291, 292 (5th Cir. 1978) (technicians

---

[5] Davidson & Walters, supra note 3, at 51-52. Even prior to the 1968 Act, these positions were civilian ones. "The technicians, now [in 1968] numbering about 42,000, are full-time civilian employees of the National Guard whose salaries are paid in full by the Federal Government and who must meet all the mental and physical standards as well as professional qualifications prescribed by the military departments." H.R.Rep. No. 1823, 90th Cong. 2d Sess., reprinted in 1968 U.S.C.C.A.N. 3318, 3319. The 1968 Act converted these largely state employees into federal ones; they had been and remained civilians.

have "a full-time civilian position, salaried by the federal government"); Davis v. Vandiver, 494 F.2d 830, 832 (5th Cir. 1974) (National Guard Technician Act was intended "to confer federal status on civilian technicians").

Importantly, then, the 1996-97 enactments did not make these technicians federal civilian employees. The 1968 National Guard Technician Act did that. We acknowledge that Section 10216 states that a technician is a federal civilian employee for "purposes of this section and any other provision of law . . . ." The Jentoft court found that the italicized phrase caused the Equal Pay Act to reach technicians because the latter Act applies to "any individual employed by the Government of the United States . . . as a civilian in the military departments. . . ." Jentoft, 450 F.3d at 1348-49 (quoting 29 U.S.C. § 203(e)(2)(A)(i)).

However, technicians' federal civilian employee status has since 1968 been an all-purpose one. We are not convinced that Congress, by noting that status in Section 10216(a), affected technicians' Title VII claims under the Feres doctrine. Title VII applies to "[a]ll personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments . . . ." 42 U.S.C. § 2000e-16(a). Our principal Title VII precedent involving these technicians called them federal civilian employees and considered that Title VII applies to a military department; still, the court concluded that technicians' dual status and military command structure caused Feres to be relevant. Brown, 227 F.3d at 299. Applying the Jentoft analysis broadly would remove the Feres doctrine as a bar to any federal statutory claims brought by National Guard technicians when the statute applies to federal civilian employees. Such a doctrinal revolution has not been noticed by other circuit courts. Feres remains relevant.

Ironically, we find in the Federal Circuit's opinion a useful listing of the claims that dual-status employees could not pursue as those "that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise involve the military 'hierarchy.'" Jentoft, 450 F.3d at 1345 (quoting, then reversing, Jentoft v. United States, 64 Fed. Cl. 549, 554 (2005)).[6] Even if the Federal Circuit was correct that Feres is inapplicable to a dual-status technician's claim under the Equal Pay Act – an issue not before us today – the list is a valid one for understanding Feres in the Title VII context.

Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management – demotions, determining performance level, reassignments to different jobs – because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

---

[6] Feres has been applied to bar a National Guard technician's claim of a hostile civilian work environment created by frequent racially offensive remarks. Overton v. New York State Div. of Military & Naval Affairs, 373 F.3d 83, 95-96 (2d Cir. 2004). Under Brown, the reach of Feres to that claim is unclear. Regardless, some Title VII claims are outside the Feres bar.

One respected commentator finds these rules indefensible: "courts inexplicably have treated [National Guard technician] positions as triggering Feres. . . . [I]t remains a mystery why Title VII claims should be barred under Feres, even in cases involving service members . . . . There is no reason why a judge-made doctrine like Feres should be viewed as trumping a federal statute like Title VII." Jonathan Turley, Pax Militaris: The Feres Doctrine and the Retention of Sovereign Immunity in the Military System of Governance, 71 GEO. WASH. L. REV. 1, 83 n.565 (2003). Of course, Feres trumped use of the Federal Tort Claims Act by an active duty soldier, though not by technicians. Not until Brown in 2000 did this Circuit apply Feres to Title VII claims brought by technicians. Claim by claim, claimant by claimant, we must decide whether the military trump card has to be used under the general rules from the Supreme Court. Congress may discard the Feres trump entirely or partially. We find that Congress only partially did so as to Title VII claims by National Guard technicians.

We apply these principles to a review of each of Major Walch's Title VII claims, which arose solely from his work as a technician for the U.S. Air Force:

(1) In May 2002, an improper one pay-grade demotion in his technician position occurred. That is said to be in retaliation for Walch's filing grievances. The demotion is a subjective personnel decision that we may not review.

(2) The complaint states that prior to his discharge, Walch had filed charges of race discrimination and a similar-based complaint with an Inspector General. The argument that these events led in 2004 to his discharge and termination involve personnel decisions by superiors which we may not review.

(3) Major Walch also alleged that retaliation for his complaints of discrimination led to a failure to refer him to a Medical Examination Board, failure to follow progressive discipline rules, wrongful demotion, and other defaults. Whether the Adjutant General's Department was retaliating against him by discipline and demotions are matters integrally related to the military hierarchy. Major Walch does not include this claim among the adverse actions we discuss below that need to be redone because of procedural errors.

(4) Major Walch claims a conspiracy by various members of the Texas National Guard. The alleged injuries all involve exempt personnel decisions.

After reviewing each claim – under Bivens, Sections 1983 and 1985, and Title VII – we have determined that none are justiciable. Because courts may not be the only tribunals available, though, we now examine certain non-judicial remedies that Major Walch insists he should be allowed to pursue.

C. Administrative procedure arguments

We discern two separate issues regarding the relevant administrative procedures, one involving Major Walch's discharge as an airman from the Texas National Guard and the other affecting his Title VII claim as a civilian technician. We discuss the issues in that order.

1. Procedures for discharge from Texas National Guard

Major Walch did not initially assert that there were further administrative remedies that needed to be pursued. His amended complaint had a section entitled "Violation of Due Process," in which he alleged procedural and evidentiary defects in his discharge from the Texas Air National Guard. The defects included not being discharged "until his term has expired," but he cites a federal statute applicable to enlisted soldiers (not officers), who have contracts for specific terms of service. 10 U.S.C. § 1169. That is irrelevant here. He also asserted that he needed to receive a "Board Review" in order to be discharged, which he did not receive, and also a Certificate of Discharge. The amended complaint also reviews in detail the allegations against him that underlay his discharge, and sets out challenges to those. His requested remedies were reinstatement to the Texas National Guard and money damages.

The administrative process that Major Walch challenged in his amended complaint was the discharge from the Guard. An internal military decision such as this may be reviewed, once the service member has exhausted his administrative remedies, to determine if an official exceeded his authority or if the decision violated constitutional, statutory, or regulatory right. Mindes v. Seaman, 453 F.2d 197, 199-201 (5th Cir. 1971). The claim here is that certain procedural protections were not provided. Because we ultimately find no facially

21

viable claim that the Guard ignored its own procedures, we will not analyze the balancing factors that would then become relevant. Id. at 201-202.

To understand this claim, we examine the two previously mentioned discharge letters that Major Walch attached to his opposition to dismissal. One letter, dated July 18, 2004, notified him of a recommendation that he be discharged pursuant to "Adjutant General of Texas Regulation 635-100 (15 Jan 1998)." Substandard performance of duty and conduct were the general grounds stated, and specifications of those defects were stated. He was told the name of his appointed counsel and of his right to submit a written response. On October 5, 2004, a letter from the Texas Adjutant General stated that Major Walch was discharged as a member of the Texas Air National Guard. His termination as a technician followed in necessary course.

On appeal, Major Walch argues that he was entitled to a board hearing, citing Cole v. Tex. Army Nat'l Guard, 909 S.W.2d 535 (Tex. App. 1995). That court found that a Guardsman had to have either a board or a court-martial determine that there was cause for discharge. Id. at 539. However, the Texas statute that the court relied upon was amended in 1997, removing the language that referred to the need for a board or court-martial. Compare Cole, 909 S.W.2d at 537 with Tex. Gov't Code Ann. § 431.042 (Vernon 2005). The principal statute now simply states that discharges shall be "according to regulations adopted by the adjutant general or to federal law or regulations." Tex. Gov't Code Ann. § 431.809. The version of the regulation cited in the notice sent about the recommended discharge, was upheld in a state court decision despite that no hearing was required. Gough v. State, 2002 WL 90930 (Tex. App. Jan. 25, 2002) (unpublished) (citing Tex. Adjutant Gen'l Reg. 635-100). We find the Gough

analysis convincing even if it is not a precedential explanation of Texas law. The Texas Adjutant General had authority without a hearing being provided, to discharge Major Walch for poor performance.

Major Walch argues that the discharge also was defective because he never received a discharge certificate. Such a document apparently provides information that can be useful in civilian employment and for other purposes, such as the dates of service, rank, and whether the discharge was honorable or not. It is also required to be given a discharged officer. 32 U.S.C. § 324. However, if in fact no certificate has yet been sent him, a largely ministerial act it would appear that may have been delayed pending the outcome of this suit, and if Major Walch's requests at this stage with the Texas National Guard fail to produce such a certificate, then there are administrative channels for him to follow, both at the state level and potentially at the federal. See Crawford, 794 F.2d at 1036. We affirm the district court as to the allegedly missing discharge certificate, but without prejudice to Major Walch's right to renew his effort to pry one away from the military once this litigation ends.

2. Exhaustion of Title VII administrative procedures

We conclude by considering Major Walch's argument that if we uphold the dismissal, we should do so without prejudice to his returning to the administrative procedures that he abandoned when filing suit. He alleges that the State Equal Employment Manager informed him that his Title VII administrative claim remains pending, awaiting resolution of this litigation.

These Title VII claims were processed within the Civilian Discrimination Complaint System. Nat'l Guard Reg. (Army) 690-600/Nat'l Guard Reg. (Air Force) 40-1614. This regulation, separately numbered for the Army and Air Force, implements Title VII for National Guard technicians. Id. at Applicability

& ¶ 1-1. Final agency resolution of complaints is at the National Guard Bureau (NGB); an appeal may be taken to the Equal Opportunity Employment Commission or a civil action may be filed in district court. Id. at ¶ 8-2.

Major Walch invoked this process but then abandoned it. It was not until the Secretary of the Air Force moved to dismiss for failure to exhaust administrative remedies, that Major Walch on September 20, 2006, himself argued that he still needed to exhaust these remedies. He sought to have the district court "remand the case sub judice for exhaustion of administrative remedies." In a reversal of position, the Secretary argued that Major Walch had exhausted his remedies and, therefore, remand was unnecessary. The district judge proceeded to final judgment without any remand.

Major Walch asserts a "remand" was needed because the NGB was required to take "final agency action" on his complaint before he could proceed in federal court. See 29 C.F.R. § 1614.102–.110. That is not what the cited regulations mean. Two methods are statutorily provided for a federal employee to invoke the jurisdiction of a federal court: (1) file suit within 90 days of receiving notice of an agency's final action or (2) file suit after 180 days from the filing of the initial charge if the agency has failed to take final action. 42 U.S.C. § 2000e-16(c). The passage of 180 days from the filing of Walch's administrative claim permitted the bringing of this civil action despite uncompleted administrative procedures. The date of November 10, 2004 for Major Walch's initial contact with his EEO office is found in a memorandum from the NGB that was attached to Walch's opposition to dismissal. If that date is correct, the 180-day period expired on about May 10, 2005. His suit was filed on November 11, 2005 – almost exactly a year after the internal filing. Because the memo is not mentioned in other pleadings, we rely on the fact an EEO complaint must be

brought within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). Major Walch's termination as a technician was effective in November 2004, making January 2005, the latest that a timely EEO claim could have been filed. No one alleges Major Walch's EEO claim was untimely. Thus, the agency procedures were sufficiently utilized even if not exhausted before suit.

Though the previously cited regulation governing technician's Title VII claims provides for judicial review after agency processes are concluded, the Feres caselaw we have discussed controls what claims actually may receive that review. Brown, 227 F.3d at 299 (claims are justiciable unless they "originate from . . . military status"). Consequently, for some Title VII claims, the administrative results cannot be reviewed by a court. That may be lamentable in some cases. However, the Feres bar does not frustrate Title VII's goals so much as it procedurally limits them – what a court cannot review in no way limits what the agency can decide. We find the words of our late colleague Irving Goldberg, writing in a different era but still persuasively for us, to be appropriate: "courts must – at least initially – indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations." Hodges v. Callaway, 499 F.2d 417, 424 (5th Cir. 1974). Insofar as Feres is the force generating the presumption, though, it is not one that applies only initially.

Even so, Feres is a doctrine that protects the military against judicial interference in certain situations. It does not bar administrative processing of the same claims within a military department. Nothing in this opinion prevents Major Walch's return to that process. Governing EEO regulations and

procedures also appear to allow a return.[7]  Restarting agency action on a claim is particularly appropriate when the statutorily encouraged resort to a civil action after lengthy agency delay becomes futile, not because of a plaintiff's procedural default but because of a judicially created doctrine such as Feres.

The judgment of the district court is AFFIRMED.  If additional administrative action occurs, the Title VII claims will remain non-justiciable no matter the final agency action on them.

---

[7] A federal employee's election to pursue Title VII claims in federal court after the passage of 180 days with no final agency action usually mandates the dismissal of his EEO complaint, see 29 C.F.R. § 1614.107(a)(3), and precludes the EEOC from entertaining an appeal of that dismissal.  29 C.F.R. § 1614.409.  The National Guard Bureau's regulation governing civilian discrimination complaint processing reflects this mandate: "When a civil action is filed before NGB has issued a final decision on the complaint, NGB will dismiss the complaint, providing that 180 days have passed since the formal filing of the complaint."  Nat'l Guard Reg. (Army) 690-600/Nat'l Guard Reg. (Air Force) 40-1614, ¶ 8-14(b).  If the NGB has not formally dismissed Major Walch's claim, he may appeal to the EEOC once final action is taken.  29 C.F.R. § 1614.402.  On the other hand, if the NGB has formally dismissed Major Walch's claims and the time for appeal has passed, the time periods for appeal are subject to equitable tolling.  29 C.F.R. § 1614.604; Wilson v. Dep't of Veterans Affairs, 65 F.3d 402, 404-05 (5th Cir. 1995).  "Generally, where a civil action is dismissed without prejudice and the Commission has not issued a final ruling, the Commission has allowed a complaint to be reinstated in the administrative process."  Garcia v. Dep't of the Navy, E.E.O.C. Appeal No. 01930356, 1997 WL 411290, at *3 (July 9, 1997); see also Jones v. Dep't of the Navy, E.E.O.C. Appeal No. 01971942, 2000 WL 1090017, at *3 (July 14, 2000).