# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2019

**Lyle W. Cayce**
Clerk

No. 18-50438

TINA NEVILLE,

Plaintiff - Appellant

v.

VICTORIA LIPNIC, Acting Chair of the U.S. Equal Employment Opportunity Commission; PATRICK M. SHANAHAN, ACTING SECRETARY, U.S. DEPARTMENT OF DEFENSE; HEATHER WILSON, Secretary of the Air Force; GENERAL JOSEPH L. LENGYEL, Chief, National Guard Bureau; JOHN F. NICHOLS, Major, Adjutant General-Texas Military,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-1231

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Tina Neville appeals the district court's grant of motions to dismiss and, alternatively, for summary judgment in favor of federal and state entities after the dismissal of her petition for writ of mandamus seeking military agency

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50438

compliance with Equal Employment Opportunity Commission (EEOC) orders finding discrimination.  For the reasons set forth below, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Tina Neville was employed as a Dual-Status National Guard Technician at Lackland Air Force Base in San Antonio.  Dual-Status Technicians (DST) are by statute both employees of the Department of the Air Force and civilian employees of the United States.  *See* 32 U.S.C. § 709(e).  As a condition to the civilian portion of the employment, a DST must become and remain a uniformed member of the National Guard.  *See* 32 U.S.C. §§ 709(b), (d)-(e).  Neville was employed in a civilian capacity as a WG-12 Aircraft Mechanic and in a military capacity as an Air Force Master Sergeant in the 149th Fighter Wing at Lackland.  Her status as a DST involved servicing F-16 fighter jets in both her civilian and military capacities.

In March 2006, Neville had a hysterectomy.  Subsequently, she developed complications related to endometriosis and submitted documentation from her physicians ordering her to work on light duty.  Neville maintains that her supervisor, Pedro Soriano, refused to allow her "light duty" because "guys don't have hysterectomies," and, as a result, she suffered a right knee injury and lower back sprain.  Neville took a medical leave of absence from June 25 or 26, 2007, to May 12, 2008.  On June 26, 2007, Neville received a performance evaluation from Soriano with a rating of "Fully Successful" rather than her previous rating of "Outstanding."  Neville maintains that Soriano said he would not give an "Outstanding" rating to someone he and "the guys did not respect."

As a result of her injury, Neville filed a claim with the Department of Labor's Office of Workers' Compensation Program (OWCP).  Although she received her regular base salary for the requisite 45 days after she was injured, Neville maintains she did not begin to receive workers' compensation benefits

2

No. 18-50438

until January 2008.  On May 12, 2008, Neville returned to work on light duty status.  However, Neville believed the modified position exceeded her physical limitations.  As a result, Neville stopped reporting to work on August 26, 2008.  On November 6, 2008, the OWCP terminated Neville's benefits on the grounds that she had abandoned suitable work offered by her employer without any justification.  In January 2009, Neville took disability retirement and retired from both her military and civilian positions.

Meanwhile, on November 13, 2007, Neville filed an EEOC complaint alleging that the United States Air Force (USAF) and the National Guard Bureau (NGB) discriminated against her on the bases of sex (female) and disability (complications from her hysterectomy).

On January 26, 2011, after various hearings, an EEOC Administrative Law Judge (ALJ) issued a decision finding that Neville established she had been subjected to gender discrimination when Soriano refused to assign her light duty and when he issued an annual performance rating of "Fully Successful" rather than "Outstanding."  The ALJ also noted numerous incidents of various crew members calling Neville offensive names and subjecting Neville to other harassment.

As a result of the discrimination, the ALJ ordered relief in the form of (1) back pay with interest and benefits; (2) non-pecuniary compensatory damages for the emotional and physical harm Neville suffered as a result of the discrimination; (3) attorneys' fees and costs of $63,675.03; and (4) an amendment to Neville's 2006-07 performance appraisal.  The ALJ also ordered NGB to provide EEO training, post a notice of discrimination for 12 months, and recommended that disciplinary action be taken against Soriano.

Thereafter, the federal and state defendants declined to implement the ruling on jurisdictional grounds, asserting the actions arose out of Neville's service as a military technician, were barred by the *Feres* doctrine, and also

3

that the ALJ ordered relief in contravention of the Eleventh Amendment because the Texas Military Department is a state entity and did not waive its sovereign immunity. The USAF and NGB appealed the ALJ's decision and Neville counter-appealed. On August 1, 2013, the EEOC's Office of Federal Operations (OFO) issued a final decision. The 2013 OFO decision: (1) upheld the ALJ's decision finding sex discrimination; (2) ordered an increased non-pecuniary award of $150,000 be paid to Neville within 60 days; (3) ordered the NGB to provide Neville back pay for the period between June 25, 2007, and August 26, 2008, as well as attorneys' fees and other remedial action within 60 days; (4) ordered the NGB to amend Neville's 2006-07 performance rating within 60 days; (5) ordered the NGB to provide Title VII training to all management officials at Lackland; (6) ordered the NGB to take disciplinary action against responsible management officials; and (7) ordered the NGB to post a notice of discrimination.

On December 17, 2013, Neville filed a petition for enforcement (PFE) of the order with the EEOC, claiming that the USAF, NGB and Texas Air National Guard (TXANG) had disregarded the 2013 OFO decision.

On July 2, 2015, the EEOC issued its 2015 PFE decision finding: (1) at the time of Neville's claim, she was acting as a federal civilian employee under the protection of Title VII; (2) the TXANG is a federal executive agency for the purposes of Title VII; and the TXANG discriminated against Neville based on her sex. In addition to the above-listed requirements of the 2013 OFO decision, the 2015 PFE decision ordered the TXANG to: (1) pay Neville $150,000 in non-pecuniary compensatory damages, as well as $63,675.03 in attorneys' fees and costs, within 30 days; (2) compensate Neville for all back pay, with interest and benefits between June 25, 2007 and August 26, 2008, within 30 days; calculate and compensate Neville for any overtime; (4) amend Neville's 2006-07 performance appraisal; and (7) provide at least 16 hours of in-person training

No. 18-50438

to all management officials and employees at Lackland, 149th Fighter Wing, Flight Line Section, regarding Title VII responsibilities.  The 2015 PFE decision also ordered the Department of Defense, as head of the NGB and USAF, to consider taking appropriate disciplinary measures against the responsible employees and to post notice of discrimination.  Additionally, the 2015 PFE decision said that, if the agencies failed to comply, then Neville had the right to file a civil action to force compliance under 29 C.F.R. §§ 1614.407, 1614.408 and 1614.503(g).

On March 18, 2016, Neville filed an Amended Petition for Writ of Mandamus in the U.S. District Court for the District of Columbia seeking to compel the EEOC to enforce the final decision on her PFE or, alternatively, to force the defendants to comply with the PFE.[1]  In December 2016, Neville's amended petition was transferred to the Western District of Texas. Thereafter, the defendants filed motions to dismiss and, alternatively, for summary judgment.  Neville filed a motion for summary judgment and, alternatively, for a directed verdict.  On November 20, 2017, the district court granted the defendants' motions and denied Neville's.  The court dismissed Neville's petition for writ of mandamus.  Neville subsequently filed this appeal.

## STANDARD OF REVIEW

Under federal law, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. §1361.  A district court awards mandamus "in the exercise of a sound judicial discretion." *Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002) (quoting *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 311

---

[1] Neville filed her original petition for writ of mandamus on July 1, 2015, one day before the EEOC issued its 2015 PFE Decision.

(1917)).   A district court's decision not to exercise jurisdiction under the mandamus statute is reviewed for an abuse of discretion.  *Newsome*, 301 F.3d at 231.  Further:

> A writ of mandamus is an "extraordinary remedy." *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 542 (5th Cir.2001). "Mandamus is not available to review discretionary acts of agency officials." *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir.1984). Further, in order to be granted a writ of mandamus, "[a] plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." *U.S. v. O'Neil*, 767 F.2d 1111, 1112 (5th Cir.1985) (quoting *Green*, 742 F.2d at 241).

*Id.*

We review de novo a district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The district court must dismiss the action if it finds that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).  "A trial court may find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wolcott*, 635 F.3d at 762 (internal marks and citations omitted).

A district court's dismissal under Rule 12(b)(6) is reviewed de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff.  *Id.* at 763.  We likewise review questions of law de novo.  *Szwak v. Earwood*, 592 F.3d 664, 668 (5th Cir. 2009).  Reversal is not appropriate where the district court can be affirmed on any grounds.  *Wolcott*, 635 F.3d at 763.

We review de novo a district court's grant of summary judgment, viewing all evidence in the light most favorable to the nonmoving party and drawing

No. 18-50438

all reasonable inferences in that party's favor. *Dediol v. Best Chevrolet*, 655 F.3d 435, 439 (5th Cir. 2011). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

## DISCUSSION

### I. Whether the district court erred in finding the EEOC did not owe Tina Neville a duty to enforce its judgments against its co-defendants.

After Neville's case was transferred to the Western District of Texas, due to the complexity of the case and the multiple parties involved, the district court dismissed all then-pending motions without prejudice to re-filing in the interests of efficient case management. Subsequently, the EEOC, federal defendants, and the state defendant separately filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and, alternatively, for summary judgment. Neville filed a motion for summary judgment and, alternatively, for directed verdict.

The district court found that it did not have jurisdiction over Neville's mandamus claims and granted the defendants' motions to dismiss and alternative motions for summary judgment. In doing so, the district court agreed with the EEOC that it did not have a nondiscretionary duty to attempt to obtain an agency's compliance with a final EEOC order after the employee commenced a civil action in federal court.

Neville asserts that the EEOC owed her a duty to take all necessary action to enforce its order and that the district court erred. Neville also asserts that the EEOC reassumed any obligation it may have waived when it acted on

7

her case again.  The action to which Neville refers was merely a letter sent on January 25, 2017, from the EEOC to various defendants "reminding them the NDAA [National Defense Authorization Act] of 2017 clarifies that federal employment discrimination claims arising from activities occurring when National Guard members are in civilian pay status are indeed covered by Title VII."

Under 29 C.F.R. § 1614.503, "[a] complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction" setting forth "the reasons that lead the complainant to believe that the agency is not complying with the decision."  29 C.F.R. § 1614.503(a).  The EEOC is then required to undertake the necessary steps to gain compliance.  29 C.F.R. § 1614.503(b).

Further, Neville had the option of filing a civil action to enforce compliance or filing a de novo civil action on the underlying discrimination claim.  *See Massingill v. Nicholson*, 496 F.3d 382, 384 (5th Cir. 2007).

The EEOC regulations state:

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
(b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
(c) Within 90 days of receipt of the Commission's final decision on an appeal; or
(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407.

> Additionally, pursuant to employment by the federal government:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a), or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c).

Neville filed a petition for enforcement with the EEOC. But, when the EEOC failed to issue a decision within 180 days, Neville filed her petition for writ of mandamus. This court has said that an employee's decision to pursue Title VII claims in federal court typically mandates dismissal of the EEOC complaint and "precludes the EEOC from entertaining an appeal of that dismissal." *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 304 n.7 (5th Cir. 2008); *see also* 29 C.F.R. §§ 1614.107(a)(3), 1614.409.

Based on this authority, we conclude that the district court correctly granted the EEOC's motion to dismiss and, alternatively, for summary judgment.

No. 18-50438

**II. Whether the district court erred in finding that the federal defendants and state defendant were immune from prosecution based on the *Feres* doctrine.**

The *Feres* doctrine of intra-military immunity precludes members of the military from pursuing claims against the military or the United States for injuries that arise out of or in the course of military service. *See Feres v. United States*, 340 U.S. 135, 146 (1950). Here, the federal defendants argued, and the district court agreed, that Neville's mandamus claims arose out of or in the course of activity incident to her military service. Thus, judicial review was precluded. Further, they assert on appeal that, even if the Title VII claims arose purely from Neville's civilian position, they would still be barred by the *Feres* doctrine.

Neville asserts that the *Feres* doctrine does not apply because her mandamus claims arose from her position as a civilian employee. Neville acknowledges that "the reach of *Feres* is uncertain in cases regarding national guard technicians." (Appellant's Brief at 27). Neville cites *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 92 (2d Cir. 2004).

*Overton* states that "[t]here are at least two persuasive reasons to conclude that the *Feres* doctrine may apply to a lawsuit based on alleged actions taken while the Guard Technician is being paid as a civilian employee." *Id*. at 92. Those reasons are: (1) "a Guard Technician's employment as a civilian is usually in support of a mission that is ultimately military in nature;" and (2) "there are concerns about the intrusive nature of the inquiry that would be necessary for a federal court to disentangle a plaintiff's civilian and military duties . . . . The mere process of arriving at correct conclusions would disrupt the military regime." *Id.,* 373 F.3d at 92. (internal marks and citation omitted). The *Overton* court then explained that the application of the *Feres* doctrine to certain Title VII actions is not entirely straightforward, as *Feres* leaves

10

matters incident to service to the military "in the absence of congressional direction to the contrary." *Id.* at 93.

In *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000), this court stated that a Guard technician's Title VII racial discrimination claim would be permissible if it involved only actions taken purely in a civilian capacity. However, this court noted that categorizing such a claim may be difficult and that a civilian claim might be military if it challenged conduct that was "integrally related to the military's unique structure." *Id.* at 299 n.5 (citing *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995)). Further, in *Brown*, the actions were considered military and the court was not required to determine which cases would be purely civilian.

In 2008, this court considered whether *Feres* barred the discrimination and retaliation claims of a DST. *See Walch*, 533 F.3d 289. In a situation where the classification of a claim is difficult, the court said it "might turn to factors such as whether the conduct is integrally related to the military's unique structure." *Id.* at 299 (internal marks and citations omitted). Further, the court said, "we find in the Federal Circuit's opinion a useful listing of the claims that dual-status employees could not pursue as those that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise involve the military hierarchy." *Id.* at 300 (internal marks and citations omitted). This court then concluded:

> Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

No. 18-50438

*Walch*, 533 F.3d at 301.

This court also addressed this matter in *Williams v. Wynne*, 533 F.3d 360 (5th Cir. 2008) and *Filer v. Donley*, 690 F.3d 643 (5th Cir. 2012). Specifically, in *Filer*, this court concluded:

> Filer challenges as inadequate the Air Force's response to the noose incident. The Air Force conducted two separate investigations of the incident, one of which adjudged its impact on unit cohesion, while the other resulted in decisions about military promotion, awarding military honors, and appropriate training for military personnel. Lt. Col. Kountz had to clear his decision on Roark's military discipline with the FW Commander, Col. Pottinger. A session of squadron-wide EEO training was ordered. These decisions are integrally related to the military's unique structure. Judicial re-examination of such decisions would be disruptive to the military.

*Id.* at 649 (internal marks and citations omitted). Further, the court said:

> [B]ecause Title VII hostile environment claims often criticize the conduct of co-workers as well as supervisors, they are at least as likely as individual discharge claims to require close review of military structure, discipline, and cohesion. *Feres* broadly prohibits tort suits where a service person's injuries "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. It is the military environment, not the nature of the claim, that is controlling.

*Id.*, at 649-50.

As stated by the district court, the events giving rise to Neville's claims occurred on Lackland Air Force Base. Neville performed the same mechanic tasks of servicing F-16 fighter jets in both her civilian and military capacities as a DST. The district court correctly concluded that those tasks are military in nature and integral to the military mission. Neville's petition for writ of mandamus sought to compel the defendants to, among other things, revise her performance appraisal, provide personnel training at Lackland, take

12

disciplinary action against various military personnel, and restore benefits including in-grade steps and promotions. Based on all of that, the district court correctly concluded that adjudicating Neville's claims would require the court to review questions of military decision-making barred by the *Feres* doctrine.

## III. Whether the district court erred when it did not order separate counsel for the EEOC given the alleged inherent conflict of interest.

Neville asserts that the district court abused its discretion by not ordering separate counsel for the EEOC because the EEOC and the other agencies involved had differing positions. The federal defendants, including the EECO, dispute the claim that the Department of Justice or the Attorney General cannot represent multiple federal agencies simultaneously and assert that there is no conflict of interest.

Neville cites Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct for the proposition that an attorney cannot represent two parties whose interests are materially and directly adverse to each other. She asserts that the EEOC is seeking to enforce its judgment against defendants who argue the EEOC never had jurisdiction to decide it in the first place. However, the EEOC argues that once she filed her petition, it no longer had an obligation to attempt enforcement.

The Attorney General has "plenary power over all litigation to which the United States or one of its agencies is a party." *Marshall v. Gibson's Prod., Inc. of Plano*, 584 F.2d 668, 676 n.11 (5th Cir. 1978). Neville has failed to provide any evidence that the Texas rules somehow override this. Thus, Neville has failed to demonstrate any abuse of discretion on this issue.

Accordingly, for the reasons set out herein, we AFFIRM.