**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LISA M. ZURESS,
            *Plaintiff-Appellant,*

v.

MICHAEL B. DONLEY, Acting
Secretary, United States
Department of the Air Force,
            *Defendant-Appellee.*

No. 08-17559

D.C. No.
2:08-cv-00606-HRH

OPINION

Appeal from the United States District Court
for the District of Arizona
H. Russel Holland, District Judge, Presiding

Argued and Submitted
March 10, 2010—San Francisco, California

Filed June 8, 2010

Before: Cynthia Holcomb Hall, John T. Noonan and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

John A. Conley; Phoenix, Arizona; James Burr Shields II; Phoenix, Arizona; W. Blake Simms; Phoenix, Arizona, for the appellant.

Suzanne M. Chynoweth; Phoenix, Arizona; Marleigh Dover; Washington, D.C.; Lowell Sturgill, Jr., Washington, D.C., for the appellee.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question of whether the intra-military immunity doctrine, as embraced by our circuit in *Mier v. Owens*, 57 F.3d 747 (9th Cir. 1995), was superseded by the National Defense Authorization Act for Fiscal Year 1998 ("1997 Amendments"), Pub. L. No. 105-85, § 522(a), 111 Stat. 1629, 1734 (1997), codified at 10 U.S.C. § 10216(a). We conclude that the 1997 Amendments did not repeal the intra-military immunity doctrine, and we affirm the district court's dismissal of the action.

I

Pursuant to the doctrine of intra-military immunity, "members of the armed forces may not bring an action against the

Government or armed service personnel for injuries during activity under the control or supervision of a commanding officer." *Hodge v. Dalton*, 107 F.3d 705, 710 (9th Cir. 1997) (citation omitted). The doctrine applies "whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States." *Id.* at 710 (quotation omitted); *see also Stauber v. Cline*, 837 F.2d 395, 397-99 (9th Cir. 1988); *see generally Feres v. United States*, 340 U.S. 135 (1950) (origin of the doctrine). The doctrine arises out of the sensitive nature of military operations, the unique relationship of the soldier to his superiors, and the special role of the miliary in providing national defense. *United States v. Brown*, 348 U.S. 110, 112 (1954).

But what of the circumstance when a civilian is employed by the military? Or, more relevant to our analysis, when an individual serves in the dual role of civilian and military employee? In *Mier v. Owens*, we applied the doctrine of intra-military immunity to hold that we could not entertain a Title VII claim brought by a dual status technician in the Army National Guard. 57 F.3d at 750. If no events had intervened, the result in this case would be clear. *Mier* would dictate that we apply the doctrine of intra-military immunity and affirm the dismissal of the suit. However, Zuress argues that the 1997 Amendments have altered the legal landscape, and two of our sister circuits have disagreed on that question. *Compare Williams v. Wynne*, 533 F.3d 360, 367 (5th Cir. 2008) (holding that the 1997 Amendments did not affect prior doctrine) *with Jentoft v. United States*, 450 F.3d 1342, 1348-49 (Fed. Cir. 2006) (holding that the 1997 Amendments allowed a dual status National Guard technician to bring an Equal Pay Act claim against the military).

But first to the background of our controversy. Lisa Zuress was a dual status Air Force Reserve Technician at the Luke Air Force Base in Arizona. Air Force Reserve Technicians provide management, administration, and training of reserv-

ists and oversee the transition of their units from peacetime to wartime or national emergency. Air Force Instruction ("AFI") 36-108, ¶ 1 (July 26, 1994).

The Air Force Reserve Technician program was initiated in 1957 after authorization by letter from the Civil Service Commission. *Am. Fed'n of Gov't Employees v. Hoffman*, 543 F.2d 930, 932 (D.C. Cir. 1976); *Ridgway v. Aldrige*, 709 F. Supp. 265, 267 (D. Mass. 1989). Prior to that time, Air Reserve Flying Centers were maintained and operated by units composed of military and civilian personnel that were organizationally separate from the Air Reserve Wings. *Am. Fed'n of Gov't Employees*, 543 F.2d at 933. "[B]y replacing military support personnel with civil servants and requiring civilian support personnel to be active reserve members," the Air Force Reserve Technician program "in effect integrated the support organizations into the Air Reserve Wings." *Id.* "The primary goal of the plan was to increase the combat readiness of Air Force Reserve units, as well as their effectiveness in the event of mobilization." *Id.* at 932-33; *see also* Air Force Reserve Command Instruction ("AFRCI") 36-114, ¶ 2 (Aug. 10, 2001).

Congress provided express statutory authority for the Air Force Reserve Technician program in 1996. *See* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 513, 110 Stat. 186, 305-07 (1996), codified at 10 U.S.C. § 10216. That law required, among other things, that all Air Force and Army technicians hired after the statute's enactment date maintain membership in the Air Force or Army Reserve as a condition of their employment. *Id.*

In a separate law enacted later in 1996, Congress added a statutory definition for the position of Air Force and Army technician which provided:

> IN GENERAL.—Military technicians are Federal civilian employees hired under title 5 and title 32

who are required to maintain dual-status as drilling reserve component members as a condition of their Federal civilian employment. Such employees shall be authorized and accounted for as a separate category of dual-status civilian employees, exempt as specified in subsection (b)(3) from any general or regulatory requirement for adjustments in Department of Defense civilian personnel.

National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 1214, 110 Stat. 2422, 2695 (1996), codified at 10 U.S.C. § 10216.

In 1997, Congress amended that definition and distinguished between "dual status" and "non-dual status" military technicians. Amended § 10216(a) provided:

In general.—(1) For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee who—

(A) is employed under section 3101 of title 5 or section 709(b) of title 32;

(B) is required as a condition of that employment to maintain membership in the Selected Reserve;

(C) is assigned to a civilian position as a technician in the administration and training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

(2) Military technicians (dual status) shall be authorized and accounted for as a separate category of civilian employees.

1997 Amendments, codified at 10 U.S.C. § 10216(a). The newly enacted § 10217(a) provided:

(a) Definition.—For the purposes of this section and any other provision of law, a non-dual status technician is a civilian employee of the Department of Defense serving in a military technician position who—

(1) was hired as a technician before November 18, 1997 . . . and as of that date is not a member of the Selected Reserve or after such date has ceased to be a member of the Selected Reserve; or

(2) is employed under section 709 of title 32 in a position designated under subsection (c) of that section and when hired was not required to maintain membership in the Selected Reserve.

National Defense Authorization Act for Fiscal Year 1998, § 523(a), 111 Stat. at 1736, codified at 10 U.S.C. § 10217(a). Air Force Technicians are required to wear their military uniforms while acting in both their civilian and military capacities. *See* AFI 36-2903, tbls. 1.3, 6.1 (Aug. 2, 2006).

Zuress was employed as a dual status Air Force Reserve Technician at Luke Air Force Base from July 2000 to June 2005. She served in a civilian capacity as a GS-12 Operations Staff Specialist for the 944th Operations Group and in a military capacity as an Air Force Reserve Captain in the 944th Operations Group.

Zuress alleges that the Air Force violated her rights under Title VII by failing to promote her; failing to extend her military retirement date as long as she had requested; temporarily detailing her to a lower-grade position; and forcing her retirement. She contends that this unfair treatment began in September 2003 after she wrote a letter to senior Defense Department officials describing inappropriate sexual behavior following a Fighter Squadron "naming" ceremony and that it escalated when she agreed to serve as a character witness in

a coworker's discrimination case. Zuress alleges that, in retaliation, her former military commander refused to return her salute and her supervisors gave her two "average" performance reports, eliminating her chance for promotion. Because military officers twice passed up for promotion must separate from the military, Zuress's performance reports guaranteed her forced retirement.

According to her complaint, Zuress realized upon receiving her second performance report that she would not be promoted and would be ineligible to remain in the Air Force Reserves. The denial of promotion meant losing her civilian position as well.

She submitted military retirement paperwork in January 2005, went on leave, and requested a one-year leave of absence to search for another position. Allegedly in a retaliatory gesture, her supervisor denied her request for a one-year leave of absence and granted a four-month leave instead. Zuress then cancelled her request for leave and returned to work. When she returned, she was detailed to a lower grade GS-7 position. In March 2005, Zuress learned that she had not been promoted and would be forced to retire. Three months later, she retired from the Air Force Reserve and was separated as a civilian employee.

Zuress filed a complaint in district court alleging that the Air Force had violated her rights under Title VII, naming the Secretary of the Air Force as the sole defendant. On the Secretary's motion, the district court dismissed Zuress's amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). This appeal followed.

We review de novo dismissal for lack of subject matter jurisdiction, *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946 (9th Cir. 2008), and may affirm on any

basis supported by the record, *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007).

## II

When interpreting a statute, " 'we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' " *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)). If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless "the legislative history clearly indicates that Congress meant something other than what it said." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc) (quotation omitted). If the statutory language is ambiguous, we consult legislative history. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

In the present context, we must also examine the relevant statutory provisions in light of case law that pre-existed adoption of the 1997 Amendments. We presume that Congress is familiar with controlling precedent and expects that its enactments will be interpreted accordingly. *United States v. Wells*, 519 U.S. 482, 495 (1997). For this reason, we must consider the 1997 Amendments against the backdrop of our intra-military immunity precedent.

**[1]** Beginning with *Feres*, the Supreme Court has been quite careful in guarding the doctrine of intra-military immunity against statutory and common law challenges. 340 U.S. at 146 (holding that the doctrine applied to suits brought under the Federal Tort Claims Act); *see also Chappell v. Wallace,* 462 U.S. 296, 305 (1983) (enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations). Our Circuit has followed suit. *See Hodge,* 107 F.3d at 710 (intra-military

immunity doctrine precludes suit brought by active-duty military personnel pursuant to 42 U.S.C. § 2000e-16(e)); *Mier*, 57 F.3d at 751 (intra-military immunity doctrine preludes suits by dual status employees under Title VII); *Stauber,* 837 F.2d at 401 (intra-military immunity precludes common law tort suit by dual status employee); *Gonzalez v. Department of Army,* 718 F.2d 926, 929 (9th Cir. 1983) (intra-military immunity doctrine precludes suit under Title VII); *Mollnow v. Carlton*, 716 F.2d 627, 631 (9th Cir. 1983) (intra-military immunity precludes military officers from suing fellow military officers under 42 U.S.C. § 1985(1) or common law tort theories); *Mattos v. United States*, 412 F.2d 793, 794 (9th Cir. 1969) (intra-military immunity doctrine precludes suits by reservists against fellow reservists for injuries received while on reserve training).

In *Gonzalez* and *Mier,* we quoted with approval the Eighth Circuit's observation that "if Congress had intended for [Title VII] to apply to the uniformed personnel of the various armed services, it would have said so in unmistakable terms." *Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir. 1978) (quoted in *Gonzalez*, 718 F.2d at 928 and in *Mier,* 57 F.3d at 749).

**[2]** In *Mier*, we began our statutory analysis by applying the "unmistakable terms" test and determined that Congress had not — either through the National Guard Technicians Act or Title VII itself — "stated in 'unmistakable terms' " that Title VII applies to dual status National Guard technicians. *Id.* at 749 (quoting *Gonzalez*, 718 F.2d at 928). We clarified that under the doctrine of intra-military immunity, courts "decline to hear lawsuits involving personnel actions integrally related to the military's unique structure." *Id.* at 749. We held that "Title VII . . . encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure." *Id.* at 750. Finally, we declined to entertain the plaintiff's claims — which alleged discriminatory denial of military promotions and suspension

from civilian employment, as well as retaliation — because they challenged personnel actions integrally related to the military's unique structure. *See id.* at 750-51.

**[3]** Zuress concedes that the personnel actions that she challenges are integrally related to the military's unique structure, and thus that her claim is foreclosed under the analysis in *Mier.* However, she argues that the 1997 Amendments undermine *Mier.* We disagree.

The critical portion of § 10216(a), as amended in 1997, states:

> (1) For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee who—
>
> (A) is employed under section 3101 of title 5 or section 709(b) of title 32;
>
> (B) is required as a condition of that employment to maintain membership in the Selected Reserve;
>
> (C) is assigned to a civilian position as a technician in the administration and training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

Zuress points to the phrase "any other provision of law," and argues that the plain language of amended § 10216(a) indicates that Congress intends for dual status Air Force Reserve Technicians to be treated as civilian employees for the purpose of filing Title VII claims. The Federal Circuit recently adopted this position in *Jentoft v. United States*, 450 F.3d 1342 (Fed. Cir. 2006), in which it held, based on the 1997 amendment, that a dual status National Guard technician

could bring an Equal Pay Act claim against the military. 450 F.3d at 1348-49. The *Jentoft* court reasoned:

> Section 10216(a) provides that 'for purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee.' Notably, there is no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee. Thus, the plain language of § 10216(a) makes clear that Jentoft has a justiciable claim under the Equal Pay Act.

*Id.* (emphasis removed).

**[4]** We respectfully disagree with the Federal Circuit. Rather, we agree with the Fifth Circuit that the 1997 Amendments did not effect such a substantive change, as dual status technicians have long been recognized as " 'civilian employees whose positions require that they also serve in the military reserves.' " *Williams v. Wynne*, 533 F.3d 360, 367 (5th Cir. 2008) (quoting *Brown v. United States*, 227 F.3d 295, 297 (5th Cir. 2000)) (emphasis removed); *accord Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 299 (5th Cir. 2008) (noting that "there was nothing new in 1996 about considering these technicians to be federal civilian employees," since they had already been described as such in prior case law). Both before and after the 1997 Amendments, dual-status Air Force Reserve Technicians held "a hybrid job entailing both civilian and military aspects." *See Mier*, 57 F.3d at 749; *see also* AFRCI 36-114, ¶ 2 (Aug. 10, 2001) (recognizing that dual status Air Force Reserve Technicians "are full-time civilian employees who are also active members of the Air Force Reserve unit in which they are employed"). As we suggested in *Mier* and *Gonzalez*, a clear statement is required from Congress to override our settled judicial doctrine of intra-military immunity. *See Mier*, 57 F.3d at 749; *Gonzalez*, 718 F.2d at

928. The text of the 1997 Amendments does not satisfy that standard.

[5] Moreover, the legislative history of the 1997 Amendments demonstrates that Congress employed the phrase "for any provision of law" to eliminate inconsistencies in the nomenclature used to refer to dual status technicians, rather than to override settled case law on intra-military immunity. Prior to the amendment, congressional enactments referred to military technicians under three different titles: "military (civilian) technicians," *see* Department of Defense Appropriations Act, 1996, Pub. L. No. 104-61, § 8087, 109 Stat. 636, 668 (1995), "military technicians," *see* National Defense Authorization Act for Fiscal Year 1996, § 513(c), 110 Stat. at 305, and "dual-status military technicians," *see id.* at 306. A House Report for the bill explained:

> The National Defense Appropriations Act for Fiscal Year 1996 (Public Law 104-61) and the National Defense Authorization Act for Fiscal Year 1996 (Public Law 104-106) enacted provisions defining the term "military technician" which were not completely consistent with one another. This section would remove the inconsistencies by defining a military technician (dual status) as a federal civilian employee who is hired in accord with titles 5 or 32, United States Code, and who, as a condition of federal civilian employment, must maintain military membership in the selected reserve, and who also must be assigned to a position as a technician in the administration and training of the selected reserve, or to a position in the maintenance and repair of supplies or equipment issued to the selective reserve or armed forces.

H.R. Rep. No. 105-132, National Security Committee, at 358 (1997). Indeed, Zuress points to nothing in the legislative history of the amendment that suggests Congress intended to

waive the United States's sovereign immunity for Title VII suits by dual status military technicians. There is no mention of Title VII in the legislative history of the 1997 Amendments, nor is there any indication that Congress intended to authorize any cause of action that was previously unavailable to a dual status technician. *Accord Williams*, 533 F.3d at 367 ("Nothing in the legislative history of § 10216(a)(1)(B) suggests that Congress intended to intrude on such military personnel decisions."). Instead, the provisions at issue appear to have been primarily concerned with distinguishing between dual status and non-dual status technicians and with annual requests to Congress for authorization of different categories of technicians. *See Walch*, 533 F.3d at 299; H.R. Rep. No. 105-132, at 348, 358.

Zuress contends that we should refuse to consider the legislative history of amended § 10216 given its plain meaning. However, "[t]he purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Daas*, 198 F.3d at 1174. If a statute is ambiguous, we "may look to its legislative history for evidence of congressional intent." *Id.* at 1174.

**[6]** We conclude that the 1997 Amendments do not justify a reexamination of *Mier*. *See* 57 F.3d at 748. We therefore affirm the judgment of the district court. We do not, and need not, address any other issue raised by the parties.

**AFFIRMED**.