# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3334

_____

Nancy J. Wetherill,             *
                                        *

        Plaintiff-Appellant,    *

                                        *   Appeal from the United States
     v.                        *   District Court for the
                                        *   District of South Dakota.

Pete R. Geren, Secretary of the Army;   *
The Army National Guard;   *
Steven R. Doohen, Brigadier General,   *
in his official capacity as Adjutant   *
General of the South Dakota National   *
Guard; Theodore Johnson, Brigadier   *
General, in his official capacity; and   *
The South Dakota Army National   *
Guard,   *
                                        *

        Defendants-Appellees.   *

_____

Submitted: June 17, 2010
Filed: August 11, 2010

_____

Before WOLLMAN, EBEL[1] and COLLOTON, Circuit Judges.

_____

EBEL, Circuit Judge.

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

This case requires us to determine whether the <u>Feres</u> doctrine, which generally bars judicial review of military decision-making, precludes us from hearing a Title VII suit brought by a "dual-status" National Guard technician, whose position was both military and civilian in nature. While Colonel Nancy Wetherill was initially granted a waiver of mandatory retirement from her military position, that waiver was later revoked. As a result, she was forced to quit her civilian position as a dual-status technician, and she was unable to obtain the full Civil Service pension attendant to the civilian aspect of that position. Wetherill brought suit under Title VII, alleging that the revocation of her military waiver constituted impermissible discrimination based on sex and/or national origin. The district court[2] dismissed the action, holding that Wetherill's complaint was non-justiciable under the <u>Feres</u> doctrine.

On appeal, Wetherill presses two arguments. First, she argues that the <u>Feres</u> doctrine does not apply at all to dual-status National Guard technicians, by operation of a 1997 amendment to 10 U.S.C. § 10216 addressing funding for such positions. Second, she argues that, even if <u>Feres</u> applies to dual-status technicians generally, the district court applied the improper standard to her case and thus prematurely dismissed her action. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the decision of the district court.

## BACKGROUND

Nancy Wetherill is a Japanese-American woman.[3] She began working for

---

[2] The Honorable Karen E. Schreier, Chief Judge for the District of South Dakota, presiding.

[3] On review of the district court's grant of a motion to dismiss, we take all factual allegations in the complaint as true. <u>Little Gem Life Sciences, LLC v. Orphan Medical, Inc.</u>, 537 F.3d 913, 917 (8th Cir. 2008).

the South Dakota Army National Guard in 1974, was commissioned as an officer on July 4, 1977, and was promoted to her highest rank of Colonel on July 1, 1999. As for the events giving rise to this litigation, Wetherill was employed as a "dual-status" National Guard technician, which meant that she was paid as a civilian employee under the Civil Service system, but her job required her at all times to be an officer of the National Guard, and she worked in uniform. See 10 U.S.C. § 10216(a); 32 U.S.C. § 709(b).

Under 10 U.S.C. § 14507(b), National Guard Colonels who have not been recommended for promotion to a higher rank are required to retire from the military after 30 years of service. This statute thus sets an officer's Mandatory Retirement Date ("MRD"). Wetherill's MRD was July 31, 2007. Under the regulations of the Civil Service Retirement System, however, Wetherill would not qualify for a full retirement annuity unless she continued working in her civilian capacity as a dual-status National Guard technician until December 31, 2010, which she could not do once she was retired from the military.

Faced with this predicament, Wetherill asked Major General Michael A. Gorman, then the Adjutant-General[4] of the South Dakota Army National Guard, for a waiver of her MRD so that she could continue working until her Civil Service annuity matured. General Gorman granted this request on May 10, 2007, and his decision was approved by the National Guard on July 18 of that year. In September 2007, however, General Gorman retired, and Brigadier General Steven R. Doohen was appointed Adjutant-General of the South Dakota National Guard. In January 2008, General Doohen asked the National Guard to revoke the waiver given to Wetherill; in February, he informed Wetherill of this decision and that it was being made for "force management" reasons. (Apl't App. at 5 [Complaint ¶ 15].) The National Guard approved General Doohen's request, and Wetherill's

---

[4] The Adjutant-General of a state's National Guard is the overall commander of that state's Guard. See 32 U.S.C. § 314.

MRD was re-set to July 31, 2008 (at this point, she was already serving beyond her original statutory MRD pursuant to the May 2007 waiver).

Wetherill believed that General Doohen's revocation of her MRD waiver was motivated by sex and/or national origin discrimination, and complained both informally and formally to the Office of Equal Opportunity and Civil Rights of the National Guard Bureau.  Between May and July 2008, Wetherill was reassigned to a building where she worked in a room by herself, and was given work "that no Colonel would ever be required to perform."  (Apl't. App. at 5-6 [Complaint ¶ 19].)  According to Wetherill's complaint, no other technician in the South Dakota Army National Guard has had an MRD waiver revoked, and she is the only Asian-American female officer and the only woman to have served at her level in the South Dakota Army National Guard.  Wetherill did indeed retire from the Guard on July 31, 2008, and thus had to relinquish her technician job as well.  See 32 U.S.C. § 709(b) (requiring that dual-status technicians must "[b]e a member of the National Guard").

After her appeal was denied by the National Guard Bureau, Wetherill filed this action in the District of South Dakota against the Secretary of the Army, the Army National Guard, General Doohen and another general, and the South Dakota Army National Guard (collectively, "the Guard"), alleging discrimination and retaliation based on sex and/or national origin, in violation of Title VII.  42 U.S.C. § 2000e-2(a)(1) (barring discrimination "against any individual . . . because of such individual's race, color, religion, sex, or national origin . . . .").  All of the defendants moved to dismiss the complaint under a variety of theories.  The district court granted the motions to dismiss, holding that Wetherill's complaint was nonjusticiable under the Feres doctrine, and thus that the court lacked subject-matter jurisdiction to hear the case.  Wetherill v. Geren, 644 F. Supp. 2d 1135, 1142 (D.S.D. 2009).  Wetherill timely appealed to this court.  We review the district court's grant of a motion to dismiss for lack of subject-matter jurisdiction

de novo.  Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009).

## DISCUSSION

## I.     Genesis and Development of the Feres Doctrine

In order to understand the gravamen of Wetherill's arguments on appeal, a brief detour is in order to assess the origins and history of the Feres doctrine.  In Feres v. United States, 340 U.S. 135 (1950), the Supreme Court held that members of the armed forces who sustained injury while on duty due to the negligence of other servicemembers or the military itself could not sue the United States under the Federal Tort Claims Act ("FTCA").  The Court framed its decision in terms of statutory interpretation.  While there was no language in the FTCA expressly excluding servicemember claims against the military—and indeed, some of the statutory language could have been construed as implicitly endorsing such liability[5]—the Court nevertheless interpreted the statute in concert with "the entire statutory system of remedies against the Government."  Id. at 139.  In the Court's view, the FTCA was a narrow exception to the otherwise prevailing norm of sovereign immunity.  Congress enacted the statute in order to "transfer[] the burden of examining tort claims to the courts," and thus stem the "steadily increas[ing]" tide of private bills in Congress demanding relief for individuals who

---

[5] For example, the FTCA expressly included within "employee[s] of the Government" whose actions could give rise to liability "members of the military or naval forces of the United States."  See Feres, 340 U.S. at 138 (quoting 28 U.S.C. § 2671).  And the FTCA explicitly excluded injuries suffered by soldiers "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during times of war."  Id. (quoting 28 U.S.C. § 2680(j)) (emphasis omitted).  Thus the language of the statute could have been construed to reach injuries incurred not during time of war and not arising out of combatant activities (such as the accidental injuries sustained by the parties in Feres).  See id.

had suffered harm at the hands of the government. Id. at 140. But, the Court noted, "Congress was suffering from no plague of private bills on the behalf of military and naval personnel, because a comprehensive system of relief had been authorized for them and their dependents by statute." Id. Thus, in the Court's view, compensation for harms suffered by servicemembers while on duty was not within Congress' purpose in passing the FTCA.

The Court then turned to the language of the FTCA providing the test for liability: "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." Id. at 141 (quoting 28 U.S.C. § 2674). This test did not create a new species of liability; it merely adopted the standards of tort law as applied to private individuals. And because "[w]e know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving," the petitioners in the case could point to no analogous circumstance that a private individual might face that would give rise to liability; private individuals, after all, cannot maintain armies. Id. Thus, the FTCA could not create liability in the United States for a harm which no private party could inflict under tort law.

In reaching its conclusion, the Court distinguished one of its earlier precedents, Brooks v. United States, 337 U.S. 49 (1949), in a manner that sheds light on the governing standard under Feres. In Brooks, a soldier who was injured when a government-owned and -operated vehicle collided with a car in which he was a passenger, was allowed to recover from the United States under the FTCA. Feres, 340 U.S. at 146. Brooks could do so, however, only because he had been on furlough at the time of the accident: "[t]he injury to Brooks did not arise out of or in the course of military duty." Id. at 146. In contrast, Feres was killed when his barracks caught on fire while he was on active duty. Id. at 137. According to the Court, the federal government cannot be liable under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146 (emphasis added).

In a later case, Chappell v. Wallace, 462 U.S. 296 (1983), the Supreme Court further articulated the policy basis of Feres and its progeny. Underlying Feres was a recognition of "the peculiar and special relationship of the soldier to his superiors, [and] the effects on the maintenance of [FTCA] suits on discipline." Id. at 299 (quoting United States v. Muniz, 374 U.S. 150, 162 (1963) (internal quotation marks omitted)). The Court counseled that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." Id. at 300. Thus the Court in Chappell extended the reasoning of Feres to bar suits by soldiers against their superiors for violation of constitutional rights under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (creating a cause of action for injuries sustained due to unconstitutional actions of federal agents). Chappell, 462 U.S. at 305.

The courts of appeals have extended Feres to encompass Title VII claims by servicemembers against the military. While the text of Title VII makes its strictures applicable to "employees . . . in military departments," 42 U.S.C. § 2000e-16(a), that provision has generally been interpreted to apply only to civilian employees of the armed forces. Johnson v. Alexander, 572 F.2d 1219, 1224 (8th Cir. 1978) ("[N]either Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the armed forces of the United States."); see also 29 C.F.R. § 1614.103(d)(1) (EEOC regulation noting that Title VII applies to "military departments," but not to "[u]niformed members of the military departments"). Thus, as a general rule, the Feres doctrine precludes claims brought by servicemembers under Title VII arising out of activities that are incident to military service. See Hupp v. U.S. Dep't of the Army, 144 F.3d 1144, 1147 (8th Cir. 1998); see also, Overton v. N.Y. State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004); Brown v. United States, 227 F.3d 295, 299 (5th Cir. 2000); Mier v. Owens, 57 F.3d 747, 749-50 (9th Cir. 1995). The Feres

doctrine also generally applies to members of the National Guard, as well as members of the regular military. Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 667 n.1, 672, 673-74 (1977) (applying Feres to block a third-party indemnity claim against the United States over the death of a National Guard officer); see also Hupp, 144 F.3d at 1147.

## II.     The Feres Doctrine Applies to Dual-Status National Guard Technicians

Notwithstanding the unquestioned applicability of the Feres doctrine to servicemembers generally, Wetherill argues that we should not apply the doctrine to her position—dual-status National Guard technician—specifically. This argument springs from the text of 10 U.S.C. § 10216, which provides:

> (a) In general. — (1) For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee who—
>
>> (A) is employed under section 3101 of title 5 or section 709(b) of title 32[6];
>> (B) is required as a condition of that employment to maintain membership in the Selected Reserve; and
>> (C) is assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

This provision was enacted as part of the National Defense Authorization Act for Fiscal Year 1998, Pub. L. 105-85, 111 Stat. 1629, 1734-35 (1997).[7] The essence of

_____

[6] 32 U.S.C. § 709(b) is the applicable provision governing Wetherill's dual-status civilian employment.

[7] 10 U.S.C. § 10216 was first enacted as part of the National Defense Authorization Act for Fiscal Year 1996, Pub. L. 104-106, 110 Stat. 186, 306

Wetherill's argument is that § 10216 establishes that dual-status technicians are "Federal <u>civilian</u> employee[s]" "[f]or purposes of . . . <u>any other provision of law</u>," which, she argues, would include Title VII (emphasis added).  In her view, then, § 10216 renders her position civilian, rather than military, and thus the Guard should be amenable to her Title VII suit notwithstanding the <u>Feres</u> doctrine.[8]

In support of this argument, Wetherill points to <u>Jentoft v. United States</u>, 450 F.3d 1342 (Fed. Cir. 2006).  In that case, the Federal Circuit considered the interaction of § 10216 and the <u>Feres</u> doctrine in the context of an Equal Pay Act claim, and came out on Wetherill's side of the question.  For the Federal Circuit, the plain language of the statute—that a dual-status technician is "a Federal civilian employee" for the purposes of "any other provision of law"—was sufficient to

---

(1996).  Subsection (a), which is the provision at issue in this case, was added as part of the 1997 amendments referenced above.

[8] As a preliminary matter, we note that <u>Hupp</u>, in which we applied the <u>Feres</u> doctrine to bar a Title VII claim brought by a dual-status National Guard technician, was decided approximately six months after the enactment of the current version of § 10216.  We did not consider the effect of the newly-amended statute in <u>Hupp</u>, and, indeed, in that case, the plaintiff "acknowledge[d] that employment decisions concerning a National Guard civilian technician's military qualifications are non-justiciable under the <u>Feres</u> doctrine."  <u>Hupp</u>, 144 F.3d at 1147.

As a general proposition, "when an issue is not squarely addressed in prior case law, we are not bound by precedent through <u>stare</u> <u>decisis</u>."  <u>Passmore v. Astrue</u>, 533 F.3d 658, 660 (8th Cir. 2008) (<u>citing</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 630-31 (1993)); <u>see also</u> <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").  Given that we are here reaffirming the applicability of the <u>Feres</u> doctrine to dual-status National Guard technicians, we need not address the finer points of the <u>stare</u> <u>decisis</u> force of the parties' concession to that effect in <u>Hupp</u>.

indicate Congress' purpose to remove dual-status technicians from the ambit of judge-made doctrines such as <u>Feres</u>. <u>Jentoft</u>, 450 F.3d at 1348 ("[T]here is no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee."). Given "the broad and unambiguous language contained in" the statute, the Federal Circuit believed that application of <u>Feres</u> to dual-status technicians was effectively foreclosed by the actions of Congress. <u>Id.</u> at 1349 (noting that Congress has the ultimate authority to regulate the military system of justice).

However, two of our sister circuits have considered and rejected the reasoning of <u>Jentoft</u>. In <u>Walch v. Adjutant General's Dep't. of Texas</u>, 533 F.3d 289 (5th Cir. 2008), the Fifth Circuit reaffirmed its precedent that the <u>Feres</u> doctrine applies to dual-status National Guard technicians, notwithstanding the 1997 amendments to 10 U.S.C. § 10216. That court began by noting that the operative language of § 10216 "refer[s] to technicians' civilian status as an introduction to provisions primarily concerned with the annual requests to Congress for authorizing specific numbers of technician positions." <u>Walch</u>, 533 F.3d at 299. This statutory language classifying dual-status technicians was, in the Fifth Circuit's view, "nothing new." <u>Id.</u> Indeed, the court observed that the 1997 amendments to § 10216 had not made dual-status technicians federal civilian employees; rather, "[t]he 1968 National Guard Technician Act [which created the position of dual-status technician in the first place] did that." <u>Id.</u> at 300. In sum, the Fifth Circuit did not believe that Congress had intended "a doctrinal revolution" in amending § 10216 in 1997, and thus held that <u>Feres</u> continued to apply. <u>Id.</u>

The Ninth Circuit picked up and expanded upon this line of reasoning, while rejecting the conclusion of the <u>Jentoft</u> court, in <u>Zuress v. Donley</u>, 606 F.3d 1249

(9th Cir. 2010).[9]  The Zuress court examined the legislative history of the 1997 amendments to § 10216 and discovered that "the provisions at issue appear to have been primarily concerned with distinguishing between dual status and non-dual status technicians and with annual requests to Congress for authorization of different categories of technicians."  606 F.3d at 1255.  The "any other provision of law" language relied upon by Wetherill and the Jentoft court, in the Ninth Circuit's view, was added to the statute in 1997 merely to "eliminate inconsistencies in the nomenclature used to refer to dual status technicians, rather than to override settled case law on intra-military immunity," such as the Feres doctrine.  Id. (citing H.R. Rep. No. 105-132, at 358 (1997) ("The National Defense Appropriations Act for Fiscal Year 1996 . . . and the National Defense Authorization Act for Fiscal Year 1996 . . . enacted provisions defining the term 'military technician' which were not completely consistent with one another.  This section would remove the inconsistencies . . . .")).  In light of this explanation for the "any other provision of law" language and the lack of any mention of Title VII or the Feres doctrine in the legislative history, the Zuress court concluded that Congress did not intend for the 1997 amendments to affect the application of that doctrine to dual-status technicians.  Id.

We are more persuaded by Walch and Zuress than by Jentoft, and thus join the Fifth and Ninth Circuits in holding that the 1997 amendments to 10 U.S.C. § 10216 do not remove dual-status National Guard technicians from the strictures of the Feres doctrine.  Like the Fifth Circuit, we had acknowledged the hybrid military-civilian nature of dual-status technicians prior to the 1997 amendments to § 10216.  See Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992).  Our recognition of the civilian aspect of the dual-status technician positions has given us no pause in applying the Feres doctrine to the military aspects of that position.

---

[9] The plaintiff in Zuress was a dual-status Air Reserve technician, rather than a dual-status National Guard technician, but the statutory provisions at issue are the same.  606 F.3d at 1250.

See id. at 740; see also Hupp, 144 F.3d at 1147; Uhl v. Swanstrom, 79 F.3d 751, 756 (8th Cir. 1996). Thus, as the Fifth Circuit noted, the recognition in the 1997 amendments that dual-status technicians are federal civilian employees—albeit civilian employees which had as a condition of their employment that they remain members of the armed services—was indeed "nothing new." Moreover, the Ninth Circuit's analysis in Zuress provides a convincing justification for the reference in the 1997 amendments to "any other provision of law"; this language was designed to harmonize the nomenclature to be used for dual-status technicians throughout the U.S. Code. See Zuress, 606 F.3d at 1255.

Indeed, it would have been odd for Congress fundamentally to alter the legal condition of dual-status technicians in 10 U.S.C. § 10216, a statute that overwhelmingly just addresses the details of obtaining funding for National Guard positions, see, e.g., 10 U.S.C. §§ 10216(b) ("As a basis for making the annual request to Congress . . . ."); (c) ("The Secretary of Defense shall include as part of the budget justification documents . . . ."); (e) ("Funds appropriated for the Department of Defense . . . ."), rather than in 32 U.S.C. § 709, which defines the position of dual-status technician and lays out who may and may not occupy such a position. In the words of the Fifth Circuit in Walch, such an action would have created a "doctrinal revolution," which has gone unnoticed by every court other than the Federal Circuit in Jentoft. Walch, 533 F.3d at 300. And, as the Supreme Court has observed, Congress "does not, one might say, hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001). This particular elephant—opening the National Guard to lawsuits by any dual-status technician under any federal statute—is simply too big for the mousehole that is 10 U.S.C. § 10216.

In sum, then, we reject the reasoning of the Federal Circuit in Jentoft, join the Fifth and Ninth Circuits, and reaffirm our own circuit precedent that the Feres doctrine may be applied to dual-status National Guard technicians, notwithstanding the 1997 amendments to 10 U.S.C. § 10216.

**III. The District Court Correctly Dismissed Wetherill's Claim Under the Feres Doctrine**

With the question of the applicability of the <u>Feres</u> doctrine to dual-status National Guard technicians settled in the affirmative, we now turn to whether the district court correctly dismissed Wetherill's Title VII claims for lack of subject-matter jurisdiction. En route to dismissing Wetherill's claims, the district court considered a number of different standards used by different circuits for dismissal of a case under the <u>Feres</u> doctrine. <u>Wetherill</u>, 644 F. Supp. 2d at 1140-41 (noting standards such as "involves an assessment of military qualifications," "integrally related to the military's unique structure," and "irreducibly military in nature"). In the end, however, the district court concluded that "[u]nder any of these analyses used by various courts of appeal, Wetherill's Title VII claims are barred." <u>Id.</u> at 1141.

Here, Wetherill argues, the district court erred. In her view, the district court should have exclusively considered the <u>Feres</u> standard laid out by this court in <u>Hupp</u>, which is to say that the disposition of her claim should have turned on whether the challenged decision "involved an assessment of a technician's military qualifications." <u>Hupp</u>, 144 F.3d at 1148. Moreover, Wetherill argues that the district court answered that question prematurely; noting that the <u>Hupp</u> court relied upon a sworn statement produced during discovery in making its decision, Wetherill argues that the district court should have denied the motion to dismiss, allowed discovery to proceed, and adjudicated the <u>Feres</u> issue on a motion for summary judgment.

We disagree on both counts. First, despite Wetherill's arguments to the contrary, the <u>Hupp</u> court did not purport to set out the "involves an assessment of military qualifications" test as a standard to be applied to all <u>Feres</u> doctrine challenges. <u>Hupp</u> cited three prior cases—<u>Uhl</u>, <u>Wood</u>, and <u>Watson</u>—for its

-13-

"assessment of military qualifications" language. Hupp, 144 F.3d at 1148. That language, however, did not appear in Watson, originated in Wood, and was quoted only parenthetically in Uhl. Wood, 968 F.2d at 740 ("The nature of the pleaded claim, judicial review of a discrete intraservice personnel decision which decision involves, as it does, an assessment of an individual's military qualifications for command responsibilities . . . is nonjusticiable . . . ."); see also Uhl, 79 F.3d at 755 (citing Wood); Watson v. Ark. Nat'l Guard, 886 F.2d 1004, 1010 (8th Cir. 1989) (observing that claims requiring "a fact-specific inquiry into an area affecting military order and discipline" implicate the Feres doctrine).

This is not to criticize either the Hupp court or the district court here in using the "involves an assessment of military qualifications" language. Rather, it merely goes to show that that language was not meant by any prior panel of this court to be a one-size-fits-all test for all Feres claims. Under the facts of Hupp and Wood, the court there looked to whether the challenged decisions involved an assessment of military qualifications because, in both cases, the technicians challenged the Guard's decision not to promote them to a particular position. Hupp, 144 F.3d at 1145 (challenging decision not to promote Hupp from Detachment Sergeant to Support Services Supervisor); Wood, 968 F.2d at 739 (challenging failure to assign Wood to position of Air Commander). In such a case, inquiring into what informed the decision not to promote would be essential to deciding whether Feres was implicated. It does not follow, however, that every Feres case will turn on whether the challenged decision involved an assessment of military qualifications.

In any event, we are not persuaded that these various standards of Feres are inconsistent, or reflect anything more than the unique facts and claims presented by the parties in those particular cases. At its core, the standard to be applied by this court to determine whether a particular claim is barred under the Feres doctrine is, quite simply, the standard articulated in Feres itself: Did the injury complained of arise out of or occur in the course of activity incident to military service? Feres, 340 U.S. at 146. To ask whether a decision involved an assessment of military

-14-

qualifications, <u>Hupp</u>, 144 F.3d at 1148, or whether the conduct was "integrally related to the military's unique structure," <u>Luckett v. Bure</u>, 290 F.3d 493, 499 (2d Cir. 2002), or whether the position at issue is "irreducibly military in nature," <u>Fisher v. Peters</u>, 249 F.3d 433, 441 (6th Cir. 2001), is only to ask, as applied to a particular set of facts or a particular legal claim, whether the injury was incident to military service. The <u>Hupp</u> and <u>Wood</u> courts did not intend their language to be regarded as magic words for all <u>Feres</u> cases; rather, those words were merely the most efficient tool for excavating the underlying question of whether the injury was incident to military service.

Of course, since the operative test is whether the injury arose out of activity incident to military service, it is conceivable that a dual-status technician might suffer an injury purely as a civilian that could give rise to a justiciable claim against the Guard as employer. Such a case would be a descendant of <u>Brooks</u>, where the Supreme Court held that a soldier's accidental death due to military negligence while off duty gave rise to a justiciable FTCA claim against the United States. <u>Brooks</u>, 337 U.S. at 50, 54 (cited in <u>Feres</u>, 340 U.S. at 146). While at least one of our sister circuits apparently has held that dual-status technicians are "irreducibly military in nature" such that they can never have a claim against the Guard, <u>Fisher</u>, 249 F.3d at 441, 443, we decline to adopt such a categorical rule. <u>Accord</u> <u>Overton v. N.Y. State Div. of Military and Naval Affairs</u>, 373 F.3d 83, 95 (2d Cir. 2004) (abjuring a categorical rule for all dual-status technicians); <u>Brown v. United States</u>, 227 F.3d 295, 299 (5th Cir. 2000) (same); <u>Mier v. Owens</u>, 57 F.3d 747, 750 (9th Cir. 1995) (same). Because Title VII applies to civilian employees of military departments, dual-status technicians could theoretically suffer an employment injury not incident to military service, and thus maintain a justiciable suit under Title VII against the Guard.

This is not such a case, however.

With the legal landscape now explored, we finally turn to whether the district court correctly dismissed Wetherill's Title VII claims without further discovery. In Wetherill's complaint, which we must take as true for the purpose of reviewing a dismissal, she stated that her Guard superiors told her they were revoking her MRD waiver for "force management reasons." (Apl't App. at 5 [Complaint ¶ 15].) To be sure, she claimed that the proffered reason was mere pretext for discrimination, (Id. at 6 [Complaint ¶ 23] ("The reasons given for the revocation of Plaintiff's MRD were pretextual in nature.")), but that does not change the fact that Wetherill herself informed the district court in her complaint that the Guard claimed a military motive for its actions. Moreover, in identifying her injury more specifically, Wetherill complained that she was given work "that no Colonel would ever be required to perform." (Id. at 6 [Complaint ¶ 19].) This may have been humiliating to her, to be sure, but her very claim identifies as the source of that humiliation her military rank of Colonel. Wetherill's own factual allegations in her complaint situate this case in the heartland of the Feres doctrine.

Even if she had not identified these military bases for her injury, however, the very premise of Wetherill's lawsuit belies any claim that her injuries were not incident to military service. The essential core of Wetherill's complaint is that the Guard discriminatorily revoked her MRD waiver, which required her to retire from the Guard, which then caused her to lose her civilian position. See 32 U.S.C. § 709(b)(2) (requiring dual-status technicians to "[b]e a member of the National Guard"). But the MRD waiver and its revocation related exclusively to her military position—the effect on her civilian position was purely secondary and incidental, and occurred only due to the operation of § 709. Thus Wetherill's is precisely the opposite of a case where a dual-status technician might have a claim against the Guard under Title VII. The action she complained of was purely military, rather than purely civilian, in nature, even though that military action happened to have some civilian consequences.

-16-

Thus, the district court did not err in dismissing Wetherill's claim under the Feres doctrine without further discovery, because the allegations laid out in Wetherill's complaint made the applicability of Feres to her claims an open-and-shut case.

## CONCLUSION

We conclude that the Feres doctrine applies to dual-status National Guard technicians notwithstanding the 1997 amendments to 10 U.S.C. § 10216. Further, we reassert that the standard for determining whether Feres renders a suit nonjusticiable is whether the injuries complained of arise out of or occur in the course of activity incident to military service; under that standard, the district court did not err in dismissing Wetherill's claims.

The judgment of the district court is therefore AFFIRMED.